FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 AUG 11 PM 4:07

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

AUG 11 1999

| | | |
|---|---|---|
| JAMES L. NORTH & ASSOCIATES, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CIVIL ACTION NUMBER |
| LEON C. BAKER, P.C., et al., | ) ) | 96-C-2598-S |
| Defendants. | ) ) | |

**MEMORANDUM OPINION ON THE DEFENDANT'S
AFFIDAVIT FILED UNDER 28 U.S.C. § 144**

The defendant Leon C. Baker, P.C., ("the Corporation") through its attorney, co-defendant Leon C. Baker, filed an "Affidavit Pursuant to 28 U.S.C. § 144" on July 26, 1999. It apparently is of the view that the filing of the affidavit, *ipso facto*, removed this judge from the case.[1] That view is mistaken. Rather, "[o]nce the motion is filed under § 144, the judge must pass on the legal sufficiency of the affidavit, but may not pass on the truth of the matters alleged." *Davis vs. Bd. Of School Commr's of Mobile County*, 517 F.2d 1044, 1050 (5th Cir. 1975). The judge must also determine whether the motion was timely filed.

---

[1] Leon C. Baker ("Baker") simultaneously sent a Letter to the Clerk of the Court in which he advises: "As you are aware, Judge U. W. Clemon has been the judge conducting the above-numbered case, but he has been served with an affidavit under 28 U.S.C. Section 144, which requires him to take no further action in the case. ... Would you please send the extra copy [of the Motion to Amend the Pretrial Order] to the judge who has been assigned to replace Judge Clemon."

130

I.

The 12-page Affidavit contains 34 paragraphs. Paragraphs 3-5 seem to embody the core of the Affidavit:

> 3. At the Pretrial Conference on June 9, 1999, Judge Clemon voiced displeasure that the Corporation had filed with the Eleventh Circuit Court of Appeals a petition for a writ of mandamus in which the Corporation sought to show that it cannot obtain a fair trial before Judge Clemon.
>
> 4. In the petition for a writ of mandamus, the Corporation set forth certain rulings of Judge Clemon which were so obviously erroneous that they could not have been rendered by any fair minded judge. Since that time Judge Clemon has continued rendering such decisions against the Corporation and the other "realigned defendants."
>
> 5. However, until Judge Clemon disclosed his animus at the pre-trial conference, it was impossible to say for certain whether those irrational decisions stemmed from unfamiliarity with the relevant legal principles or from prejudice.
>
> 6. Judge Clemon's disclosure at the pretrial conference that he has a grudge against the Corporation and its fellow defendants makes it apparent that bias against the Corporation and the third party defendants may have played a part in those indefensible decisions. The most egregious rulings of Judge Clemon contrary to law are set forth below.

Affidavit, p.2. In Paragraphs 7-31, Baker discusses the various orders of the court which he contends are erroneous or biased.

In the final three paragraphs of the Affidavit, the Corporation communication between Judge Clemon and counsel for the "realigned" plaintiffs." The conclusion is based on the facts that (1) the court set a hearing on all pending motions for July 30, 1999, (2) the deposition of the defendants were subsequently noticed by the plaintiffs for July 29, 1999, in Boca Raton, Florida (the individual defendants' residence), (3) Leon Baker thereafter telephoned the plaintiffs' counsel and requested that the depositions be rescheduled based on his plans to fly to Birmingham on July 29 for the July 30 hearing, (4) the plaintiffs' counsel refused to reschedule the depositions, (5) within two hours of the refusal by the plaintiffs' counsel to reschedule the depositions, Leon Baker received a call from Judge Clemon's office informing him that the hearing on the motions had been adjourned "because of the conflict with the depositions..." Based on these facts, which the court must assume as true, the Corporation concludes: "There was obviously a unilateral communication between counsel for the "realigned" plaintiffs and Judge Clemon." *Id.*, p. 11.

II.

As a young lawyer, this judge was counsel for the losing plaintiffs in one of the leading cases in Section 144 jurisprudence, *Parrish v. Board of Comm'rs of Alabama State Bar*, 505 F.2d 12; withdrawn, 505 F.2d 520; *en banc*, 524 F.2d 98 (5th Cir. 1975); cert.

3

denied, 425 U.S. 944, 96 S.Ct.1685 (1976). In that case, our predecessor circuit[2] observed:

> Once the affidavit is filed, further activity of the judge against whom it is filed is circumscribed except as allowed by the statute. In terms of the statute, there are three issues to be determined: (1) was the affidavit timely filed; (2) was it accompanied by the necessary certificate of counsel of record; and (3) is the affidavit sufficient in statutory terms?

at 100. To be legally sufficient, the facts in the Affidavit must be material and stated with particularity. The facts must be such that, if true, they would convince a reasonable person that a bias exists. Moreover, "[t]he facts must show the bias is personal, as opposed to judicial, in nature." *Id.* Conclusory and speculative allegations are insufficient to establish bias or prejudice under Section 144. *Davis v. Commissioner*, 734 F.2d 1302 (8th Cir. 1984).

III.

The Corporation's complaint is basically that this judge has made rulings adverse to it and the co-defendants. That adverse rulings have been made is clear, but for Section 144 purposes, that consideration is legally insufficient. The bias contemplated by Section 144 must be personal or extrajudicial. Adverse rulings are simply insufficient to warrant disqualification under Section 144. *Davis*, at 1050.

---

[2] Decisions of the Fifth Circuit Court of Appeals rendered prior to October 1, 1981, are binding on the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981).

Moreover, except for the orders since the pretrial conference, the complaint based on adverse rulings is untimely. The Corporation knew of these rulings long before the Pretrial Conference. Indeed, <u>they were discussed in the mandamus petition</u> filed with the Court of Appeals in November of last year.

The Corporation's allegation of an "improper unilateral communication" between this judge and the plaintiffs' counsel is, of course, a serious one. For if the judge has had an *ex parte* conversation about this case with the plaintiffs' counsel, he has presumably violated the Canons of Judicial Ethics. The Corporation stops short of actually alleging an *ex parte* communication as a fact; instead it concludes that "obviously" there was such communication. But assuming such unethical conversation, the question becomes whether such communication would be seen by a reasonable person as evidence of bias or prejudice either against the defendants or in favor of the plaintiffs.

Assuming the truth of the Corporation's assumption, apart from its ethical implications, the communication worked to the defendants' advantage rather than to their detriment. The depositions had been set for Thursday, July 29 in Boca Raton, Florida; and plaintiffs' counsel had refused to reschedule the depositions. Baker was required to be present in court in Birmingham, Alabama, on Friday afternoon, July 30. There was no

5

actual conflict in the taking of depositions on Thursday and the scheduled court appearance on Friday afternoon.[3] Under the scenario imagined by Baker, counsel for the plaintiffs telephoned the judge, explained Baker's problem, and the judge cancelled the hearing. It was Baker who would have been inconvenienced by having to take an evening or early morning flight if the hearing had not been cancelled.

A reasonable person, knowing these facts, would conclude that no bias is reflected in the inferred ex parte communication which resulted in the cancellation of the hearing. Alternatively, a reasonable person would conclude that to the extent that any bias or prejudice is reflected by the inferred unethical communication, it was in favor of the defendants.

Because the Affidavit is legally insufficient in all respects and untimely in several respects, disqualification is not required under 28 U.S.C. § 144.

IV.

The conclusion that 28 U.S.C. has not been violated does not end the inquiry, for the court has an independent obligation to determine whether disqualification is appropriate under 28 U.S.C. § 455.

---

[3] It is judicially noticed that it takes less than five hours to fly from Miami/Fort Lauderdale to Birmingham; so that on its face, the taking of depositions in Boca Raton on Thursday would not preclude a court appearance in Birmingham on Friday afternoon.

Section 455(a) imposes on a judge an obligation to disqualify himself in any proceeding in which his impartiality might reasonably be questioned.[4] Many of the standards applicable to Section 144 also apply in Section 455 determinations. However, unlike Section 144, Section 455 does not require that the facts alleged by the movant be accepted as true.

At the pretrial conference, this judge did not voice displeasure that Baker had filed a second mandamus petition. This judge made no statement which in any way could be reasonably interpreted as a indication of "animus" or "a grudge" against any of the parties, or anyone else, for that matter. It is true that he has made rulings adverse to both the defendants and the plaintiffs in this case.

This judge emphatically denies <u>any</u> *ex parte* communication with the plaintiffs' counsel concerning this case at any time. He specifically denies any "unilateral communication" with the plaintiffs' counsel concerning Baker's perceived July 29-30 conflict.

Between the entry of the June 9 Pretrial Order and July 14 - the date on which the July motion docket was sent to counsel - the defendants filed three motions. A motion to dismiss was filed on behalf of Gloria Baker. Docket Entries ("DE"), Document ("D") 111.

---

[4] Section 455(b) lists several grounds which require automatic disqualification - e.g., personal interest in the outcome of the case, relationship to the parties or their counsel, personal bias or prejudice for or against a party, personal knowledge of disputed evidentiary facts. Except for the bias/prejudice ground, none of the other automatic disqualifiers are present in this case.

The defendants filed a summary judgment motion on the plaintiffs abuse of process claim. D. 112. The defendants also filed a motion to dismiss the counterclaim and third party complaint. D. 114. Two days after the motion docket was sent to the parties by the Clerk of the Court, the defendants filed a motion to strike ¶ 5(a) of Pretrial Order. D. 123. On July 8, the court denied the motion to dismiss the counterclaim. D 116. On July 16, the court denied Gloria Baker's motion to dismiss and the summary judgment motion. D. 122, D 121. On July 23, the court denied the motion to strike ¶ 5(a).

In denying the motion to strike on July 23, the court disposed of the last of the defendants' pending motions. There was no need for anyone in this case to appear at the July motion docket.[5] This judge therefore instructed his law clerk to call counsel for the parties and advise that the case had been removed from the July motion docket. Whether the law clerk's call to Baker coincided with Baker's scheduling negotiations with the plaintiffs' counsel, this judge does not know. But he knows that at the time he made the decision to remove the case from the July motion docket, he was not aware of Baker's inconvenience and had not talked with any lawyer concerning the removal of this case from the July motion docket.

---

[5] On June 23, the plaintiffs' counsel filed a motion to amend the pretrial order. As this motion was filed only nine days before the scheduled July motion docket, it would have been heard, if at all, at the August motion docket.

Under all the circumstances, the court concludes that a reasonable person, knowing all the circumstances, would not harbor doubt concerning his impartiality in this case. Therefore, the court perceives no reason to disqualify itself under Section 455.

DONE this 11th day of August, 1999.

_____
UNITED STATES DISTRICT JUDGE
U. W. CLEMON